### ERWIN v. STATE. (7 Div. 932.)

(Court of Appeals of Alabama. May 13, 1924.)

**1. Criminal law ⚖══589(1)—No abuse of discretion in denying continuance for failure to summon some of jurors, and mistakes in names of others.**

Court did not abuse its discretion in denying a continuance in a murder prosecution, in view of Acts 1919, p. 1042, for failure to summon some of jurors and mistakes in names of others, no substantial rights of defendant being prejudiced.

**2. Criminal law ⚖══1170(1)—Sustaining of objection to cross-examination of witness held not reversible error.**

The sustaining of an objection to cross-examination of a witness, who was an eyewit-

ness to a murder, where question called for a conclusion of witness, and defendant received the full benefit of the testimony sought from other witnesses, held not reversible error.

**3. Criminal law ⚖══1165(1)—Appellate court will not reverse on court's ruling where no harm to defendant resulted.**

Appellate court will not predicate a reversal upon a ruling of trial court in a criminal case, where it affirmatively appears that no harm resulted to defendant as a consequence.

**4. Witnesses ⚖══277(1)—Cross-examination of defendant in murder prosecution securing repetition of statement made on direct examination held not erroneous.**

Permitting cross-examination of defendant in a murder prosecution as to defendant having stated to deceased that he had heard deceased was trying to get grand jury to indict him, was not erroneous, where it was but a repetition of defendant's testimony on direct examination.

**5. Homicide ⚖══338(1) — Defendant cannot complain of cross-examination eliciting statement beneficial to him.**

Defendant could not object in a murder prosecution that his cross-examination elicited statement that he had heard deceased had threatened to kill him; such testimony being favorable to him, and law giving him the right to introduce it in his own behalf and for his own benefit.

**6. Homicide ⚖══300(14)—Instruction on self-defense omitting doctrine of apparent danger held not erroneous.**

In a murder prosecution, an instruction on self-defense was not erroneous as omitting doctrine of apparent danger, where court fully instructed on such doctrine in its other charges.

**7. Criminal law ⚖══823(17)—Instruction held not erroneous as invading jury's province.**

In a murder prosecution, an instruction that, if defendant fired the third shot by reason of passion suddenly engendered by a gun being pointed at him, it might reduce his offense to manslaughter, was not erroneous as invading jury's province, in view of court's other instructions.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Truman Erwin, alias Irvin, was convicted of murder in the second degree, and appeals. Affirmed.

Merrill & Allen, of Anniston, for appellant.

Jurors must be summoned by the sheriff at least two days before the day appointed, by personal service or leaving notice at their places of residence, and a breach of duty by the sheriff in this respect is properly raised by objection to being placed upon trial. Acts 1909, p. 311, § 16; Hale v. State, 10 Ala. App. 22, 64 South. 530; Cain v. State, 16 Ala. App. 303, 77 South. 453; Tennison v. State, 188 Ala. 90, 66 South. 112. Counsel argue other points, but without citing additional authorities.

---

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Motion to quash and objection to going to trial were properly overruled. Acts 1909, p. 320, § 32; Acts 1919, p. 1040; McKenney v. State, 17 Ala. App. 117, 82 South. 565; Caldwell v. State, 203 Ala. 412, 84 South. 272; Walker v. State, 204 Ala. 474, 85 South. 787; Umble v. State, 207 Ala. 508, 93 South. 531.

BRICKEN, P. J. Under an indictment, charging the defendant with murder in the first degree, he was tried and convicted of the offense of murder in the second degree, and the jury fixed his punishment at imprisonment in the penitentiary for a term of 16 years. Judgment was entered, and the prisoner duly sentenced in accordance with the verdict, from which he appeals.

It appears from the record that the indictment was returned into open court and filed on March 15, 1923, and, that the defendant was duly arraigned upon said indictment and pleaded "not guilty," on March 26, 1923, and that Monday, April 2, 1923, was fixed as the day for the trial of this case. Then followed a proper order by the court providing that 85 persons, including those drawn on the regular juries for that week, should constitute the venire or list of persons from which the jury to try this case shall be selected. The court thereupon drew 35 names, which together with the regular jurors drawn for the week, to wit, 50, made the number of 85 designated in the order. And in pursuance to the statute the court ordered that the clerk of the court issue an order to the sheriff directing him to summon all persons named in said order to appear in court on the day set for the trial of the defendant. The court also ordered that a list of the names of all of the jurors drawn for the week in which the case was set for trial, and those drawn specially for this case, together with a copy of the indictment be forthwith served upon the defendant by the sheriff. The record shows that the venire and a copy of the indictment were served upon defendant on March 26, 1923.

Before entering upon the trial of this cause, and on the date set for said trial, the defendant made three separate and distinct motions, in writing, to quash the venire setting out several grounds upon which these motions to quash were predicated, and on similar grounds the defendant objected, in writing, to being placed upon trial. The principal grounds upon which these several motions were predicated was the alleged failure of the sheriff to comply with the statute in serving the summons upon the several jurors designated, and the failure of the sheriff to sign a proper return made upon the venire.

[1] It is conceded in brief of counsel for defendant that the grounds stated in the motion were not sufficient upon which to quash the venire. But it is contended that upon the showing made upon the motion the court was under the duty to continue the case or postpone the trial to another day. We do not so conclude. While it must be conceded that the careless, indifferent, and negligent manner with which the sheriff undertook to execute the order of the court in the summoning of the venire of this case, borders upon the inexcusable, yet, under the express terms of the statute the failure of the sheriff to summon any of the jurors drawn, will not justify the quashing of the venire or the continuance of the case. Nor will the mistake in the name of any juror drawn or summoned be considered as sufficient grounds for this purpose. Acts 1919, p. 1042. The matter of the postponement of the case to a later date was within the discretion of the court, and it does not here appear that there was any abuse of such discretion, for it is not shown that the substantial rights of the defendant were injuriously affected. The failure to summon some of the jurors, and the mistake in the names of other jurors appear to be the basis of the objections interposed to the venire.

[2, 3] The first ruling of the court upon the testimony complained of was on cross-examination of state witness, Liles, who had testified that he was an eyewitness to the whole transaction, and stated that, when the shooting occurred, he did not see anybody else right there, but that several section hands were at work on the railroad about 60 yards away. Defendant's counsel then asked the witness:

"These people that were out there working on the section, they could see from where they were what occurred there on the porch?"

And the court sustained the state's objection to the question. There was no reversible error in this ruling. In the first place the question propounded, in effect, called for the conclusion of the witness; but, if this were not so, the defendant got the full benefit of the testimony sought by having introduced each of the persons in question all of whom stated they could see what happened from where they were, and each of them gave their testimony as to the whole transaction. We will not predicate a reversal upon a ruling of this character, it affirmatively appearing that no injury resulted to defendant as a consequence thereof.

[4] The next proposition argued by counsel for appellant is equally without merit. The defendant had testified on direct examination and was under cross-examination by the solicitor. He (defendant) had testified on direct examination that he asked the deceased what he wanted, and deceased said:

"He had come there to straighten up some tales, and defendant told him there were no tales to be straightened up, and that he (the

deceased) had been working against the defendant trying to bill him before the grand jury."

The matter which was thus brought out by the solicitor on the cross-examination of the witness was but a repetition of the statement that the defendant told the deceased that deceased had been trying to get the grand jury to indict him. The solicitor then asked the defendant this question:

"What had you heard that the deceased had been trying to do to you before you killed him?"

The defendant objected and reserved an exception. The witness answered:

"I heard he said he was going to kill me and was going to bill me before the grand jury. I heard he had made lots of threats."

This testimony of the witness was but a repetition of what he had previously stated, both on direct examination and on cross-examination, without objection to the effect that he stated to the deceased that he had heard that he was trying to get the grand jury to indict him. The defendant also made the additional statement that he heard the deceased had made lots of threats against the defendant and had said that he was going to kill the defendant.

[5] The defendant cannot object to the fact that the question elicited the statement that he had heard that the deceased had made threats to kill him. This was highly favorable to the defendant, in that the right to show that the life of defendant had been threatened by the deceased is always a privilege which the law confers upon a defendant when the testimony showed that he acted in self-defense, as the defendant swore he had in the instant case. If, as the defendant says, the deceased had made threats to kill him and these threats had been communicated to the defendant, the defendant was authorized under the law to protect himself more quickly against aggression on the part of deceased than he otherwise would have been. That is to say, the defendant was authorized under the law to interpret the conduct of the deceased at the time in the light of such threats previously stated. The defendant was not injured, but was benefited by this testimony as it was favorable to him, being testimony which the law gives him the right to introduce in his own behalf and for his own benefit.

[6] The fifth and sixth assignments of error are based on excerpts from the oral charge to which exception was reserved. The first excerpt is as follows:

"Now, in order to invoke the doctrine of self-defense he must have been in danger of life or limb or of great harm when he shot all of those shots; or, I should say, if the other shots hastened or contributed to his death."

Counsel for appellant contend that this statement is erroneous in that it omits the doctrine of apparent danger and in effect instructs the jury that the defendant must have been in actual danger. There is no merit in this insistence, for the court instructed the jury fully on the doctrine of apparent danger in the oral charge and also by given charges 12, 33, 36, 37, 38, 39, and 40.

[7] The next portion of the oral charge to which the defendant reserved an exception is in the following language:

"If you should come to the conclusion that the defendant was acting in self-defense when the first shot was fired and when the second shot was fired, and that he was not acting in self-defense at the time the third shot was fired, but that he shot at that time by reason of passion suddenly engendered by a gun being pointed at him, it might reduce what would otherwise be murder in the second degree to manslaughter in the first degree."

Counsel for appellant in their brief in commenting upon the above excerpt from the oral charge state:

"If the third shot that was fired by the defendant was not sufficient to produce death, and did not cause the deceased's death, the defendant could not have been convicted of manslaughter, or of any other degree of unlawful homicide. If he was acting in self-defense when the fatal shot was fired, then he was acting in self-defense when the deceased received the fatal wound, and was entitled to an acquittal, unless the other shots contributed to the death of the deceased, which was a question for the jury. That the court had no right to assume that the third shot was the fatal shot, or that it contributed to the death of deceased, as this was an invasion of the province of the jury."

We do not understand that the court assumed that the third shot was the fatal one, but the charge simply instructed the jury that if the defendant was not acting in self-defense when the third shot was fired, but that he fired that shot by reason of passion suddenly engendered by a gun being pointed at him, it might reduce what would otherwise be murder in the second degree to manslaughter in the first degree. The court did not say that it would be manslaughter in the first degree, but merely said, if the shot was the result of passion suddenly aroused, it would not be second degree murder, when otherwise it might be. The court had previously instructed the jury that, in order for the defendant to be penalized for the third shot, it must have accelerated or hastened the death of the deceased. The court stated that if the defendant was not acting in self-defense at the time either of the shots was fired, and if such shot accelerated or hastened his death, he would be responsible for that shot if he was not acting in self-defense at the time that shot was made and the wound was inflicted.

The court in its oral charge also explained to the jury fully that the defendant could not be penalized for firing any of the shots unless they contributed to the death of the deceased. The exceptions to the oral charge of the court cannot be upheld.

The use of the word "supposition" in several of the refused charges renders such charges bad. Smith v. State, 197 Ala. 193, 202, 72 South 316.

No error appearing in any ruling of the court, and the record proper being also free from error, the judgment appealed from will stand affirmed.

Affirmed.